cases involving the same party, so I guess different people are arguing it for the Patent Office, and since they involve discrete issues, we haven't done what we normally do, which is to combine all of these cases. So we're going to argue them each separately. Hopefully you might not need all of the time that is otherwise allotted to separate appeals, but let's get started. 141429, In Re Gross. And the first appeal is the 1429. Yes, Chief Judge, good morning, and may it please the Court. I'm here to argue all three of the cases, as your Honors mentioned, all three related by subject matter and by claims to some extent. There's some overlapping issues that I think are common to all three cases, which are good to, I think, have some kind of exposition as early as possible. There were issues raised by the Solicitor's Office, the new Alice case, which I think are common to a couple of cases. So as much as possible, I'll try to address them in the logical order. The first case, the reason we're here today for this first case is simply this. The four or five things I want to talk about are the original decision from the Board of Appeals was incorrect in that it completely reframed the examiner's rejection of the record. For that reason, we believe that it did not have the authority to recast the rejection the way that it did. It invited you to respond, right? It said, didn't it at some point say, we'll treat this as a new ground of rejection, you can tell us, so what's the process violation in terms of concrete opportunity for you to answer this? That's a good point, Your Honor. The reason why this is a little bit different than a new grounds rejection, I believe, is that I think the difference between a case that's presented to the Board that they resolve or look at on their merits and say, yay or nay, and a case where they say, no, we're not going to look at the decision you brought before us, we're going to invent a whole other case and rule on that. So what we have here is we don't have resolution of the underlying case, and they expressly admit in their papers... Let me see if I understand concretely what you're talking about. This is the difference between the examiner having kind of invoked the acid rain article as a combination versus the Board saying, you start with Hastings, you ask, would somebody in ordinary school in the art think to have trading of slots? Yeah, that's commonsensical, but we're going to do what is a pretty darn good idea to do, which is to cite something documentary to support the commonsense. That's the difference. Your Honor, it's pretty much framed correctly. The examiner repeatedly in every single office action said, I'm rejecting the claim under 103 based upon Hastings plus this acid rain article, and here's how I'm combining them. That theme is repeated in all of his papers. That's the theme we addressed in appeal. Okay, but what's, I mean, the Board did a new ground of rejection, right? And they're allowed to do that, and you get the right to respond. I'm saying, Your Honor, it's a little bit different in that if you look at their papers, if you look at the original decision, they repeat the examiner's rejection exactly as I've articulated it. They say, this is the rejection, Hastings plus acid rain. They go on to then talk about that question, but in the end, they say, oh, this is really official notice, to which we said, we're sorry, Your Honor, but to the Board, but official notice was not raised in the underlying rejection. And they said, no, you got it completely wrong. The examiner's rejection really was official notice. Go back and read it again. And so our position is, if you read the examiner's rejection, if you even read the Board's first opinion, it completely confirms what we said. Namely, the rejection was based upon those two references. Therefore, there were issues presented there in that question, which was number one, is this reference even analogous art? That's a very key question. We don't get the benefit of that ruling now, neither we nor the examiner have the benefit of the Board saying, that was the issue presented, here's the resolution. What we have is the Board saying, we're going to ignore that question altogether. We're simply saying, this is Hastings plus official notice. Fundamentally, I think those are two different things. I think I agree with you that new ground is an acceptable point, but to say, we're going to ignore what you appealed, I think is a completely different question. Even with that said, as we mentioned in our papers, we believe that we did point out fairly clearly that official notice in this instance was not appropriate, because even if the Board went back and said, well, look at everything the examiner did here, okay, everything he says is really official notice, to which we said, that doesn't make any sense because official notice is usually restricted to a few very basic facts, like I've got 10 different elements and one of them is a small variation. Okay, fine, I'll find something in the art which says that variation is commonly known. I can deal with that fine, but the examiner's explanation, if you will, of the reference was so comprehensive and so argumentative, we said, that clearly cannot qualify as being official notice, at least not within the rules as we know them. Furthermore, we were never given an opportunity to address that point because official notice was not argued by the examiner. We also mentioned in our brief that, again, even taking the fact that the acid rain article was an example of what they call allocation sharing, it clearly wasn't a reference that was remotely relevant to this field of art. The examiner and the Board both tried very hard to say, this is an old program, it's well-known, etc., etc., to which we said, okay, let's find an example of it being cited somewhere. This article, this reference, this program has never been cited by anybody anywhere. Therefore, it almost meets the definition of not possible, being analogous to almost anything. What are you looking for? I mean, what would they have had to come forward with? What kind of reference to establish that this allocation sharing thing is just a generic concept that exists in the universe? What kind of evidence would they have had to show us? Your Honor, I don't think that there's a zero universe of references in the electronics field, which might have dealt with capacity sharing. And we submitted some references to them, in fact, on that point, but they cited none of those. Is that the universe you're talking about? You think they're limited in terms of analogous art to the electronics field? No, I think, Your Honor, we did try to couch a little more carefully than that, look more concretely than that, but all I'm saying is that this particular reference, having never been cited for anything ever, just seemed completely beyond the pale of being anywhere near being analogous art. And again, the board did not rule on that issue. They made no comment about it. And again, in our opinion, the reason is because they acknowledged that this was not analogous art. They didn't want to touch that question. So they went back and said, well, we're going to tell you what he really said. And they went so far as to rewrite his Your Honor, I think we're entitled, from the black letter on the piece of paper that tells us what the rejection is, to respond to it. To change it so dramatically and tell you, no, you completely misread it, I think is just wrong. Can I change subject to the indefiniteness? Certainly. Let me just ask you a question. As I understand the issue of indefiniteness, the ground, the relatively narrow class of cases that say, in a single claim, you can't mix product and process elements, that ground doesn't depend on our accepting the Miyazaki approach to indefiniteness that the board has used, right? I don't believe so, no, Your Honor. I think that in this instance, what we point out in the reply brief also was that in this particular field of art, this is not an unusual formulation of this kind of a claim. A claim in which machine components are given functional characteristics is not unusual. Again, this is a new issue raised by the board on appeal. Once the board raised that, assuming I'm just taking that as a premise for purposes of this question, did you have an opportunity to amend or do something to reformulate the claim in light of the identification of this problem? If we had let the case go back to prosecution, if we had foregone our right to appeal, the prosecution, yes, we could have amended it potentially then. But at the time when the rejection was issued, that wasn't a rejection. The board just simply said, we don't like the claim as formulated. And the examiner never raised any objection to the claim whatsoever, by the way. So that was a new rejection issued by the board. I just want to, again, touch very briefly on this one other point, which is the allocation sharing that they borrowed from acid rain. As we pointed out in our paper, so I believe extensively, in pages 22 to 31 of the original brief, what we pointed out was, okay, it's fine to talk about some systems that use allocation sharing, if you will. But everything you point out about this program is just simply wrong. If you try to mix it and match it, it doesn't work at all. And therefore, it isn't the case that every form of allocation sharing is going to work in this particular environment. And again, we gave specific examples. The board said, well, this system has caps, for example, which is one of the things we talked about in the claim. And we said, well, there's really not caps in these pollution emission programs because you're allowed to have a cap, and then you can go way over it if you want to. And then at the end of the year, you have a reconciliation, you pay some kind of penalty. That doesn't work in an online distribution system where you're maintaining accounts and keeping people within certain restrictions. I can't send you 10 items and say, oh, you know what, I made a mistake. I'll take those five back now or pay for those five. All the little nooks and crannies, if you look at them carefully, didn't quite work. And again, we pointed out to the examiner, there's better literature on this program if you really want to study and look at it. There's materials which are pretty good on this program, which explains to you how it works. But he insisted, no, he was going to use one single summary piece of paper, and from that, effectively deduce or speculate about what the rest of the program looked like. And so, we raised issues, too, of best evidence and just simply not looking at the correct information on that point. So, that's the big picture that I want to talk about today in terms of those points. I did save some time for rebuttal, but I also want to talk about, I don't know if you want to talk about it now, but the Alice issue or rebuttal, I don't know what my position is because it was not a rejection made by the board, and therefore, I don't know if it's incumbent on me to raise it now or discuss it now as opposed to waiting for the government to make their case first. But I'm happy to talk about it now for a little bit anyway. The Alice issue was raised for the first time. We mentioned it in the reply brief that we don't think that's an applicable case here because this is not organizing human activity of any kind whatsoever. This is basic computing structures, basic computing logic, and while it's maintaining or controlling human accounts, it really has nothing to do with organizing human activity. So, therefore, we believe that it didn't fall within the realm of the class of the things which are now being called exceptions. I know this is a very difficult and hot issue now with this court, and I think that there's some guidance being given by some of the lower courts in this point that's a little bit helpful. To that end, I would point out that I'm going to borrow a little bit of rebuttal time. Towards that end, there was a case a couple of days ago by Judge Andrews of Delaware, which I think is directly on point here. What he mentioned was this is a problem. Name of case, please. I can give you the citation. But the point he made was that this is a claim which lives in the computer domain. It solves a problem which lives in computers. It's tethered to that domain, and, therefore, this is not an Alice issue. Okay. Why don't you save your rebuttal, and we'll hear from the government. Yes. Good morning. Good morning. Thank you, Your Honor. May it please the court, I believe the court is aware of the issues in this appeal. I would be happy to answer questions. Why don't you respond to the process questions your friend raised initially in his argument about the board and new ground of rejection, and we've changed the radical transformation, I think, in his view, of what the examiner did and what the board did. Yes, Your Honor. It was not a big departure from the examiner. When the board entered its new ground, the examiner said sharing based on cap-and-trade, an old known concept, and leave donation, a known old concept, to share. And sharing is the only difference from hasting. The board discussed sharing generally. Well, was the examiner saying that this is a really well-known concept in the field of Was the examiner saying that this is a well-known concept across the board in everything in here to example? Both, Your Honor. The examiner said that here's some evidence of allocation sharing, acid rain, and leave donation, and the board clarified by saying allocation sharing generally and entering a new ground. So the board clearly was the main game at this point. Not what the examiner did before, because the board gave all kinds of due process to Mr. Gross by saying you could request rehearing for this non-final new ground, or you can resume prosecution and maybe amend Claim 11 and get around our indefiniteness, new rejection as well. And then in Mr. Gross' brief to the board, he emphasized just a couple of things. He said for, and I'm referring to page 332 of the record, Mr. Gross' arguments to the board were very precise at that point. He was saying that you picked the wrong concept. This concept can't be combined with Hastings. And Hastings meets all of Claim 1, except for the sharing concept. And that's it. What are the constraints on the board with respect to reliance on official notice? I assume there's something in the MPEP? Yes, Your Honor. In the MPEP, the board, in entering a new ground especially, they did not make it a final rejection. What the MPEP says is if you're taking official notice of in particular, then you don't make that rejection a final rejection. And that's precisely what the board did here. The board entered a new ground of rejection almost based on exactly what the examiner did, Hastings plus sharing. Whereas the examiner said Hastings plus cap and trade, the acid rain literature. So the board was changing the rationale, which it expressly said. I'm just wondering in the MPEP, what kind of specificity is required of the board? I mean, you know, official notice. We're taking official notice that this is a well-known fact. They need to provide some support for that, right? Yes, Your Honor. They can give evidence of the concept right there. And the board abided by the tenants of the patent office by saying allocation sharing is a well-known concept. So it was clear that they weren't just relying on acid rain, but something broader than acid rain and leave donation. And once they invoked this concept... I think the Chief Judge was asking what in the MPEP, what guidance is provided for when official notice may be taken and when not. Yes, Your Honor. What's required is to make it clear and unmistakable that you're taking notice of a well-known fact. No, I'm not asking about the front end. I'm asking the back end. What support are they compelled to provide to establish that something is a well-known fact? Thank you, Your Honor. Evidence. And cite to evidence. And what they did complied with in its second decision, which is all Mr. Gross was arguing about in his request for rehearing about allocation sharing on page three of his brief after the new ground of rejection, he said, give me more examples. And the board then gave him more examples. They cited bandwidth allocation and sharing money. Again, age-old concepts for sharing. And here we have sharing very close to Hastings to meet claim one. Hastings... Mr. Piccolo, I'd like to ask you about the indifference of this question regarding claim one. I understand the problem where a process and an apparatus are implicated is that a potential infringer doesn't know whether he's infringing or not. How does that problem arise here? You have a system, and then you have the routine embodied. Now, isn't it clear if the routine is embodied, it infringes the system claim? And if it's not embodied, then it doesn't infringe the system claim. So what's the indefiniteness there? Well, here, Your Honor, we have three words in the claim, system, routine, and medium. And that mixes the software and the hardware and calls the whole thing a system. And that's what the board said, that it was this arrangement of things. And they went to a dictionary and could either be a method or a set of things. So when you have the claim referencing system, that's what bothered the board the most, is that the claim was broad enough... What's the process aspect? What's the method aspect? The executing on a computing system, and then the routine embodied, and executing, executing, and then you have replenishing the queue... If it's there, the system claim is infringed. If it's not there, it's not infringed. Well... So what's the indefiniteness? That it could be the process or the computer. And for example, in his specification, I don't think it has how to make that process with those steps. That sounds like enablement, not indefiniteness. Well, the board, in entering its new ground, said, we can't tell if this is a process or an apparatus. And interestingly, in responding to the board's rationale, Mr. Gross said, the third category, it's now an article of manufacture. And the board said, now I have a third statutory invention category to choose from. Why don't you clean up this claim now instead of it appearing across and spanning across three statutory categories? So the board's rationale was that it spans, within 101, three different rationales, and that's what was causing the confusion as the board articulated. He can clean this up now during prosecution. He has allowed claims in this application and other applications pending. But the word system was what struck a chord with the board, and they went to a dictionary to support their rationale. I'm in a discord. Yes, Your Honor. Again, I believe the court is aware of the issues in this appeal. If the court has no further questions, I'd be happy to take my seat. Thank you, Your Honors. Mr. Gross? Thank you, Your Honor. Just a couple of points. Again, to return to this situation, to the main theme here, what we don't have from the board now is a resolution of a very key piece of information we need to have, which is, is this reference analogous art? That was something that was briefed. We needed to know the answer to that question. We did not get it. We got a rewrite of the rejection and the rule on that. That is critical to us because the reference is being applied in other cases, and without this resolution, we basically were left hanging. The examples they gave of being allocation sharing, again, we pointed out in the brief, so I won't repeat them, but they're not really quite the same. We pointed out the difference between donating a quantity and donating capacity. If two people have, for example, leave, and one person donates leave to the other person, that person's capacity for leave hasn't changed any. All that's happened is I've given you one of my days. I still have my 10 days or 14 days, whatever it happens to be, year over year. I've simply given you a day. For every example they pointed out as being an example of something that was capacity sharing, we pointed out it was really just quantity sharing. I'm giving you something, but it hasn't changed my capacity. The question about official notice is important because the board is required to use documentary evidence of some kind, and here again, what I'm suggesting is they didn't like the acid rain reference. It could not qualify as being analogous art, and therefore, they simply said, well, let's just use it then for this backdrop purposes and invent a new rejection. I don't think that that is proper. The last point I wanted to mention about Judge Lurie's question is that the cases we said in Repry Brief, including the microprocessor enhancement case, if you read the execution logic, etc., which is recited in that claim on page 6 of the reply, it specifically says, for example, a logic pipeline stage performing a Boolean algebraic evaluation. This is a very common formulation in this field of art. Lastly, Judge Toronto, the case that I was referring to is messaging gateway solutions versus Amdocs, and I believe it came down a couple of days ago in Delaware. Thank you. All right. Why don't we turn to the next appeal? It's 14-1474, Enright Gross, also.